UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

EAST RIVER CAPITAL, INC. and ERC ACCESS, INC.,

    Plaintiffs,

        v.

VLD ACCESS, INC., STEPHEN DUNN, ROUTE
CONSULTANT, INC., and RUMMY INC.,

    Defendants.

Case No. 19-cv-1398-JPG

## MEMORANDUM AND ORDER

      This matter comes before the Court on the motion of defendant Route Consultant, Inc. to

dismiss the claims against it pursuant to Federal Rule of Civil Procedure 12(b)(2) for lack of

personal jurisdiction or, in the alternative, to compel arbitration (Doc. 24).  Plaintiffs East River

Capital, Inc. ("East River") and ERC Access Inc. ("ERC") have responded to the motion (Doc.

30), and Route Consultant has replied to that response (Doc. 31).  The Court also considers the

plaintiffs' motion for leave to file a supplemental affidavit in support of their response (Doc. 34),

to which Route Consultant has responded (Doc 35), and Route Consultant's motion to stay

discovery pending the resolution of its motion to dismiss (Doc. 32).

      This case arose after East River agreed in January 2018 to purchase assets from defendant

VLD Access, Inc. ("VLD").  One of those assets was a contract with FedEx Packaging Systems,

Inc. to provide deliveries within a certain territory in southern Illinois.  Other assets included the

fleet of vehicles used to make those deliveries.  Before the asset purchase, Route Consultant

served as a consultant for East River for a limited time.  It consulted with East River, among

other things, on an inspection and valuation of VLD's vehicle fleet.  After the closing in May

2018, when the assets were transferred to ERC, ERC came to believe that the representations by

VLD and Stephen Dunn, VLD's agent and sole shareholder, in the Asset Purchase Agreement ("APA") were false or misleading. ERC also came to believe that Route Consultant had not performed a sufficient vehicle inspection and had overvalued the vehicle fleet.

In December 2019, East River and ERC filed this lawsuit against VLD, Dunn, Rummy Inc. (another company owned by Dunn), and Route Consultant. The plaintiffs sue VLD and Dunn for breach of the APA (Count I), and they sue VLD, Dunn, and Rummy for fraudulent (Count II) and negligent misrepresentation (Count III). They also sue Route Consultant for fraudulent (Count IV) and negligent misrepresentation (Count V), as well as breach of fiduciary duty (Count VI). Finally, they sue all of the defendants for civil conspiracy (Count VI).

Route Consultant now asks the Court to dismiss the plaintiffs' claims against it for lack of personal jurisdiction based on its lack of connection to Illinois. Alternatively, it asks the Court to compel the plaintiffs to arbitrate this dispute pursuant to an arbitration clause in the consulting agreement it had with East River. The plaintiffs argue that Route Consultant has sufficient contacts with Illinois to give this Court specific personal jurisdiction and that Route Consultant's offending conduct occurred after the termination of its agreement with East River so it is not covered by the arbitration clause.

## I.     Personal Jurisdiction

When personal jurisdiction is challenged under Federal Rule of Civil Procedure 12(b)(2), the plaintiff bears the burden of establishing personal jurisdiction over a defendant. *Matlin v. Spin Master Corp.*, 921 F.3d 701, 705 (7th Cir. 2019); *Purdue Research Found. v. Sanofi-Synthelabo, S.A.*, 338 F.3d 773, 782 (7th Cir. 2003). If there are material facts in dispute regarding the Court's jurisdiction over a defendant, the Court may hold an evidentiary hearing at which the plaintiff must establish jurisdiction by a preponderance of the evidence. *Purdue*

*Research*, 338 F.3d at 782 (citing *Hyatt Int'l Corp. v. Coco*, 302 F.3d 707, 713 (7th Cir. 2002)).

Alternatively, the Court may decide the motion to dismiss without a hearing based on the

submitted written materials so long as it resolves all factual disputes in the plaintiff's favor.

*Purdue Research*, 338 F.3d at 782 (citing *RAR, Inc. v. Turner Diesel, Ltd.*, 107 F.3d 1272, 1276

(7th Cir. 1997)); *see uBID, Inc. v. GoDaddy Grp., Inc.*, 623 F.3d 421, 423-24 (7th Cir. 2010).  If

the Court consults only the written materials, the plaintiff need only make a *prima facie* showing

of personal jurisdiction.  *Matlin*, 921 F.3d at 701; *Purdue Research*, 338 F.3d at 782 (citing

*Hyatt*, 302 F.3d at 713).

A federal court sitting in diversity, as this Court is, looks to the personal jurisdiction law

of the state in which the court sits to determine if it has jurisdiction.  *Hyatt*, 302 F.3d at 713

(citing *Dehmlow v. Austin Fireworks*, 963 F.2d 941, 945 (7th Cir. 1992)).  Thus, this Court

applies Illinois law.  Under Illinois law, a court has personal jurisdiction over a defendant if an

Illinois statute grants personal jurisdiction and if the exercise of personal jurisdiction is

permissible under the Illinois and United States constitutions.  *RAR,* 107 F.3d at 1276; *Wilson v.*

*Humphreys (Cayman), Ltd.*, 916 F.2d 1239 (7th Cir. 1990).

A.      Illinois Statutory Law

Under Illinois law, the long-arm statute permits personal jurisdiction over a party to the

extent allowed under the due process provisions of the Illinois and United States constitutions.

735 ILCS 5/2-209(c); *Hyatt Int'l Corp. v. Coco*, 302 F.3d 707, 714 (7th Cir. 2002); *C. States, Se.*

*& Sw. Areas Pension Fund v. Reimer Express World Corp.*, 230 F.3d 934, 940 (7th Cir. 2000).

Therefore, whether the Court has jurisdiction over a defendant depends on whether such

jurisdiction is permitted by federal and state constitutional standards.

B.        Illinois Constitutional Law

The Illinois Constitution's due process guarantee, Ill. Const. art. I, § 2, permits the assertion of personal jurisdiction "when it is fair, just, and reasonable to require a nonresident defendant to defend an action in Illinois, considering the quality and nature of the defendant's acts which occur in Illinois or which affect interests located in Illinois." *Rollins v. Ellwood*, 565 N.E.2d 1302, 1316 (Ill. 1990).  When interpreting these principles, a court may look to the construction and application of the federal due process clause.  *Id.*  In fact, the Seventh Circuit Court of Appeals has suggested that there is no operative difference between Illinois and federal due process limits on the exercise of personal jurisdiction.  *Hyatt Int'l Corp. v. Coco*, 302 F.3d 707, 715 (7th Cir. 2002) (citing *RAR, Inc. v. Turner Diesel Ltd.,* 107 F.3d 1272, 1276 (7th Cir. 1997)).  The Court sees nothing in this case indicating that in this particular situation the federal and state standards should yield a different result.  Therefore, if the contacts between the defendant and Illinois are sufficient to satisfy the requirements of federal due process, then the requirements of both the Illinois long-arm statute and the Illinois Constitution have also been met, and no other inquiry is necessary.

C.        Federal Constitutional Law

The Due Process Clause of the Fourteenth Amendment limits when a state may assert personal jurisdiction over nonresident individuals and corporations.  *See Pennoyer v. Neff*, 95 U.S. 714, 733 (1877), *overruled on other grounds by Shaffer v. Heitner*, 433 U.S. 186 (1977). Under federal due process standards, a court can have personal jurisdiction over a defendant only if the defendant has "certain minimum contacts with [the forum state] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'"  *Int'l Shoe Co. v. Washington,* 326 U.S. 310, 316 (1945) (quoting *Milliken v. Meyer*, 311 U.S. 457, 463

(1940)). The defendant must have "purposely established minimum contacts with the forum state such that he or she 'should reasonably anticipate being haled into court' there." *Tamburo v. Dworkin*, 601 F.3d 693, 701 (7th Cir. 2010) (quoting *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 474 (1985)).

What this standard means in a particular case depends on whether the plaintiff asserts "general" or "specific" jurisdiction. Specific, or case-linked, jurisdiction refers to jurisdiction over a defendant in a suit arising out of or in connection with the defendant's purposeful contacts with the forum. *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 923-24 (2011); *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 nn. 8, 9 (1984). General, or all-purpose, jurisdiction, on the other hand, may exist even in suits that do not arise out of or relate to the defendant's contacts so long as the defendant has "continuous and systematic" contacts with the forum state. *Goodyear*, 564 U.S. at 924; *Helicopteros Nacionales*, 466 U.S. at 416. No party in this case contends the Court has general jurisdiction over Route Consultant; the issue is whether specific jurisdiction exists.

The specific jurisdiction inquiry "focuses on the relationship among the defendant, the forum, and the litigation." *Walden v. Fiore*, 571 U.S. 277, 284 (2014) (internal quotations omitted). First, there must be "some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Hanson v. Denckla,* 357 U.S. 235, 253 (1958); *accord Goodyear*, 564 U.S. at 924. Second, the lawsuit must arise out of or be related to the defendant's contacts with the forum. *Goodyear*, 564 U.S. at 923-24; *Helicopteros Nacionales*, 466 U.S. at 414 n. 8.

Even where there are sufficient minimum contacts, a defendant may still show that the exercise of jurisdiction would be unreasonable in light of such factors as "the burden on the

defendant," "the forum State's interest in adjudicating the dispute," "the plaintiff's interest in obtaining convenient and effective relief," "the interstate judicial system's interest in obtaining the most efficient resolution of controversies," and the "shared interest of the several States in furthering fundamental substantive social policies." *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 292 (1980); *see Burger King*, 471 U.S. at 476-77; *Asahi Metal Indus. Co. v. Superior Court of Cal.*, 480 U.S. 102, 113 (1987).

> D. <u>Analysis</u>

The Court begins with a review of the evidence submitted in connection with the pending motion to dismiss. It has not considered the affidavit tendered by the plaintiffs to supplement their briefing. The affidavit does not present any evidence or argument that was not available to the plaintiffs at the time of their response, so it is in the nature of a sur-reply brief, which the Court does not consider. *See* Local Rule 7.1(c).

The evidence, construed in the plaintiff's favor, shows that Route Consultant is a Tennessee corporation with its principal place of business in Tennessee. It was in the business of valuing FedEx Ground routes for sale or purchase and facilitating such sales for its clients. It neither had offices nor owned property in Illinois.

In August 2017, David Young, a Texas citizen and owner and sole shareholder of East River and ERC, asked Route Consultant about purchasing a FedEx Ground route in Missouri. Annalee Mueck, an agent of Route Consultant, and Young talked on the phone from their respective locations in Tennessee and Texas. In fact, all of Route Consultant's communications with Young was by its agents located in Tennessee. Those communications resulted in a

"Consulting Agreement" executed in September 2017.[1]  Through email, the parties executed the Consulting Agreement from their respective locations in Tennessee and Texas.

The Consulting Agreement provided that Route Consultant would "[p]erform financial analysis on a potential FedEx route acquisition.  Assist in the due diligence, information gathering, Q&A with seller, and all aspects related to forming our best estimate as to a valuation of the routes being examined," and "any other tasks which the Parties may agree on." Consulting Agreement § 1 (Doc. 24-2 at 1-2).  Under this agreement, Route Consultant investigated and analyzed several FedEx delivery routes for sale in Missouri and Texas, but East River declined to purchase those routes.

Mueck then introduced Young to VLD Access and Dunn, both Illinois citizens and Route Consultant clients who were trying to sell a FedEx Ground route and other tangible assets located in Illinois.  Route Consultant analyzed the potential acquisition of those assets on behalf of East River and had numerous email communications with Young in Texas and Dunn in Illinois to facilitate the sale.  As part of Route Consultant's analysis, Young inquired about whether a valuation of VLD's delivery trucks around November 29, 2017—presumably the $321,498 contained in the final APA—was realistic and defensible, and Mueck confirmed that it was.  Young then inquired about inspection of VLD's vehicle fleet, presumably to use the fleet as collateral for financing, and Route Consultant informed Young about various options for vehicle fleet inspections running from a basic inspection to a more thorough and more expensive inspection.

---

[1] The Consulting Agreement was entered into by "David Young of East River Capital."  Both parties assume the Consulting Agreement was entered into by Young in his official capacity as representative and agent of East River rather than in his personal capacity.  The Court declines to question that assumption.

On December 11, 2017, Route Consultant terminated the Consulting Agreement with East River—likely because it was representing VLD and Dunn in the transaction and had a conflict of interest—and returned the up-front payment received from East River. Nevertheless, Route Consultant continued to work for VLD and Dunn to facilitate the sale of the Illinois delivery route and other VLD assets to East River.

The APA was signed by VLD, Dunn and East River on January 4, 2018. Shortly thereafter, a mechanic recommended by Route Consultant inspected the vehicle fleet at the vehicles' location in Illinois. He reported minimal repair costs were necessary for the fleet. The sale closed in May 2018 with VLD's assets being transferred to ERC. Route Consultant earned a substantial commission from VLD on the completed asset sale.

There is sufficient evidence in the record which, if viewed in the plaintiffs' favor, establishes a *prima facie* case of specific personal jurisdiction. Specifically, the uncontested evidence shows Route Consultant represented VLD and Dunn, Illinois citizens, in its sale of assets to East River and earned a substantial commission for that work. All of the tangible and intangible assets sold were located in Illinois or involved a FedEx Ground delivery contract to be performed in Illinois. Indeed, Route Consultant was intimately involved in investigating, analyzing, and facilitating the sale of those Illinois assets, and purposefully took on that Illinois-related work for its own benefit—to earn a substantial commission. It is from that Illinois-related conduct that the plaintiffs' claims stem. Route Consultant cannot now deny those purposeful Illinois contacts and claim it is unfair to make it appear in court here. The Court believes the relationship between Route Consultant, Illinois, and this litigation is sufficiently strong that it would not offend traditional notions of fair play and substantial justice to hale it into court in Illinois. Accordingly, the Court finds the plaintiffs have made a *prima facie*

showing that the Court has specific personal jurisdiction over Route Consultant in this case.

Furthermore, Route Consultant has not shown that the exercise of personal jurisdiction would be

otherwise unreasonable in light of other factors. Accordingly, the Court will deny the part of

Route Consultant's motion that seeks dismissal for lack of personal jurisdiction.

Having resolved the personal jurisdiction issue, the Court turns to the arbitration

question.

## II.    Arbitration

Route Consultant asks the Court, if it finds personal jurisdiction exists, to compel the

plaintiffs to arbitrate their claims against it based on dispute resolution provisions in the

Consulting Agreement:

> 20.    In the event a dispute arises out of or in connection with this Agreement, the
> Parties will attempt to resolve the dispute through friendly consultation.

> 21.    If the dispute is not resolved within a reasonable period then any or all
> outstanding issues may be submitted to mediation in accordance with any
> statutory rules of mediation. If mediation is unavailable or is not successful in
> resolving the entire dispute, any outstanding issues will be submitted to final and
> binding arbitration in accordance with the laws of the State of Tennessee. The
> arbitrator's award will be final, and judgment may be entered upon it by any court
> having jurisdiction within the State of Tennessee.

Consulting Agreement §§ 20-21 (Doc. 24-2 at 5-6).

The arbitration question in this case is governed by the Federal Arbitration Act ("FAA").

The FAA "is a congressional declaration of a liberal federal policy favoring arbitration

agreements, notwithstanding any state substantive or procedural policies to the contrary. The

effect of the section is to create a body of federal substantive law of arbitrability, applicable to

any arbitration agreement within the coverage of the Act." *Moses H. Cone Mem. Hosp. v.*

*Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983); *accord Perry v. Thomas*, 482 U.S. 483, 488

(1987). The FAA provides that "[a] written provision in . . . a contract evidencing a transaction

involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction . . . shall be valid, irrevocable, and enforceable. . . ." 9 U.S.C. § 2; *see Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 443-44 (2006); *Matthews v. Rollins Hudig Hall Co.*, 72 F.3d 50, 53 (7th Cir. 1995). "Under the [FAA], arbitration may be compelled if the following three elements are shown: a written agreement to arbitrate, a dispute within the scope of the arbitration agreement, and a refusal to arbitrate." *Zurich Am. Ins. Co. v. Watts Indus., Inc.*, 417 F.3d 682, 687 (7th Cir. 2005) (citing 9 U.S.C. § 4).

An arbitration clause must be enforced "unless the agreement to arbitrate is not part of a contract evidencing interstate commerce or is revocable 'upon such grounds as exist at law or in equity for the revocation of any contract.'" *Perry*, 482 U.S. at 489 (quoting 9 U.S.C. § 2). "[A]ny doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability." *Moses H. Cone*, 460 U.S. at 24-25; *accord Cnty. of McHenry v. Ins. Co. of the W.*, 438 F.3d 813, 823 (7th Cir. 2006).

Route Consultant argues that its duties under the Consulting Agreement expressly included performing financial analysis and forming a valuation of the FedEx routes East River was contemplating purchasing. It notes that the plaintiffs' gripes with Route Consultant in this lawsuit concern the November 2017 $321,498 valuation of VLD's vehicle fleet that Route Consultant confirmed was realistic and defensible as well as other discussions and actions in November and December 2017—both before and after termination of the Consulting Agreement—that led to a January 2018 inspection of the vehicle fleet to support that valuation. Route Consultant argues that the plaintiffs' claims, even though partly based on events subsequent to termination of the Consulting Agreement, fall under the dispute resolution

provisions of the Consulting Agreement because they "arise[] out of or in connection with" that agreement.

The plaintiffs argue that the gravamen of their complaint is Route Consultant's conduct after the termination of the Consulting Agreement—the January 2018 vehicle inspection—so the arbitration provision in that agreement does not apply. Any obligation to arbitrate, the plaintiffs argue, terminated on December 11, 2017. The plaintiffs further argue that the Consulting Agreement was agreed to by East River, not ERC Access, so ERC Access is not bound by any arbitration agreement.

The plaintiffs talk out of both sides of their mouths in the briefing of the pending motion. First, they point to the numerous instances of email correspondence between Route Consultant occurring in late 2017—including email correspondence about a vehicle fleet evaluation—to support personal jurisdiction in Illinois. Then, in an effort to escape the consequences of the dispute resolution provisions, they argue that they are only complaining of Route Consultant's role in the January 2018 vehicle fleet inspection (making no mention of the comprehensive conspiracy alleged in Count VII). They cannot have it both ways. The Court has already found that Route Consultant had enough contact with Illinois for it to be sued here because, from September 2017 through May 2018, it facilitated an Illinois client's sale of Illinois assets that is the root of this lawsuit. The Court cannot now say that the conduct it used to support personal jurisdiction is irrelevant to this lawsuit because only January 2018 conduct is in issue. The Court will not carve up the larger relationships and courses of conduct in this case to find artificially independent specific acts. What it can say is that the dispute with Route Consultant, which includes complaints about Route Consultant's assessment of a November 2017 valuation of VLD's vehicle fleet, arose out of or in connection with the Consulting Agreement in place at that

time. And any subsequent complaints about the January 2018 vehicle fleet inspection flowed from that November 2017 conduct and is therefore also connected to the Consulting Agreement. The Consulting Agreement's dispute resolution clause therefore covers the dispute in this case against Route Consultant.

That being said, Route Consultant has not convinced the Court that the dispute resolution clause in the Consulting Agreement requires both plaintiffs to arbitrate their claims against Route Consultant. ERC Access was not a party to the Consulting Agreement, and evidence of any relationship with East River that would obligate ERC Access under that agreement is too scarce for the Court to find that it is, indeed, bound by it. Furthermore, the dispute resolution clause is not at all clear that it *requires* arbitration. It says if a dispute is not resolved informally, the parties "may" submit it to mediation, and if mediation is not available or does not resolve all the issues, only then must the parties submit the dispute to final, binding arbitration. There is no indication mediation was mandatory, that it was not available, or that it did not resolve all the issues, so the Court cannot say that all the conditions precedent to arbitration have been satisfied. Neither party addresses these issues. And while it is true that arbitration clauses must be construed broadly in favor of arbitration, a party seeking to compel arbitration must point to more than the word "arbitration" in a contract to justify a court order compelling it.

In light of the foregoing, the most the Court can say is that the dispute resolution provisions of the Consulting Agreement cover any dispute in this case between the parties bound by the Consulting Agreement. Because it is unclear who those parties are and what the dispute resolution provisions require, the Court will not compel arbitration at this time.

### III.    Conclusion

For the foregoing reasons, the Court:

- **DENIES** the plaintiffs' motion to file a supplemental affidavit (Doc. 34);

- **DENIES** Route Consultant's motion to dismiss for lack of personal jurisdiction (Doc. 24);

- **DENIES without prejudice** Route Consultant's motion to compel arbitration (Doc. 24); and

- **DENIES as moot** in light of this order Route Consultant's motion to stay discovery (Doc. 32).

**IT IS SO ORDERED.**
**DATED:  April 7, 2020**

s/ J. Phil Gilbert
**J. PHIL GILBERT**
**DISTRICT JUDGE**
