UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

EAST RIVER CAPITAL, INC. and ERC ACCESS, INC.,

    Plaintiffs,

    v.

VLD ACCESS, INC., STEPHEN DUNN, ROUTE CONSULTANT, INC., and RUMMY INC.,

    Defendants.

Case No. 19-cv-1398-JPG

## MEMORANDUM AND ORDER

This matter comes before the Court on the second motion of defendant Route Consultant, Inc. to compel arbitration and stay these proceedings (Doc. 37). Plaintiffs East River Capital, Inc. ("East River") and ERC Access Inc. ("ERC") have responded to the motion (Doc. 42), and Route Consultant has replied to that response (Doc. 46).

**I.    Background**

In response to Route Consultant's first motion to compel arbitration, the Court set forth the background of this case, including the consulting arrangement between Route Consultant and East River under which Route Consultant agreed to facilitate East River's purchase of a FedEx Ground delivery route and the vehicle fleet used for that route (Doc. 36). The Court need not revisit further specifics except to say that Route Consultant and David Young, owner and sole shareholder of East River, entered into a written "Consulting Agreement" in September 2017 in which Route Consultant promised to "[p]erform financial analysis on a potential FedEx route acquisition. Assist in the due diligence, information gathering, Q&A with seller, and all aspects related to forming our best estimate as to a valuation of the routes being examined," and "any other tasks which the Parties may agree on." Consulting Agreement § 1 (Doc. 24-2 at 1-2).

Pursuant to the Consulting Agreement, Route Consultant offered an opinion to East River in November 2017 regarding a valuation of the delivery truck fleet it eventually purchased.

The Consulting Agreement also contained the following dispute resolution provisions "the arbitration clause":

> 20. In the event a dispute arises out of or in connection with this Agreement, the Parties will attempt to resolve the dispute through friendly consultation.
>
> 21. If the dispute is not resolved within a reasonable period then any or all outstanding issues may be submitted to mediation in accordance with any statutory rules of mediation. If mediation is unavailable or is not successful in resolving the entire dispute, any outstanding issues will be submitted to final and binding arbitration in accordance with the laws of the State of Tennessee. The arbitrator's award will be final, and judgment may be entered upon it by any court having jurisdiction within the State of Tennessee.

Consulting Agreement §§ 20-21 (Doc. 24-2 at 5-6). By its terms, the Consulting Agreement is governed by Tennessee law. Consulting Agreement § 29 (Doc. 24-2 at 7).

On December 11, 2017, Route Consultant terminated the Consulting Agreement with East River and returned the up-front payment East River had made pursuant to that agreement. Nevertheless, Route Consultant continued to work for another party to the transaction—the seller of the route and vehicle fleet—shepherding the deal to execution of an asset purchase agreement in January 2018 and to closing in May 2018, at which point the assets were transferred to ERC.

After the closing, a dispute arose about Route Consultant's November 2017 advice regarding the valuation of the vehicle fleet and the subsequent January 2018 inspection and valuation—the fleet ended up being worth a lot less than the plaintiffs were led to believe. In December 2019, East River and ERC filed this lawsuit against Route Consultant and the sellers of the route and vehicle fleet. The plaintiffs are suing Route Consultant for fraudulent (Count IV) and negligent misrepresentation (Count V), as well as breach of fiduciary duty (Count VI) and civil conspiracy (Count VI). Route Consultant believes the arbitration clause in the

Consulting Agreement compels the plaintiffs to arbitrate this dispute rather than pursuing this lawsuit.

In response to Route Consultant's first motion to compel arbitration, the Count held that the arbitration clause covers any dispute in this case between the parties bound by the Consulting Agreement. This was so because the dispute "ar[ose] out of or in connection with" the Consulting Agreement even though some of Route Consultant's offending conduct occurred after the termination of the Consulting Agreement in December 2017. Under the law of the case doctrine, the Court will not reconsider its prior order absent extraordinary circumstances, which no party has shown. *See Christianson v. Colt Indus. Operating Corp.*, 486 U.S. 800, 817 (1988) (quoting *Arizona v. California*, 460 U.S. 605, 618 n. 8 (1983). However, the Court's prior ruling left several questions open; the Court was not convinced that the arbitration clause *required both plaintiffs* to arbitrate. It specifically noted ambiguities about whether ERC was bound by the provision in the Consulting Agreement signed by East River and about what the language actually requires of the parties. It is these two questions that are at issue in the pending motion as well as whether the questions are for the Court or for an arbitrator to decide.

**II.     Analysis**

As the Court noted in its prior order, this case is governed by the Federal Arbitration Act ("FAA"). The FAA "is a congressional declaration of a liberal federal policy favoring arbitration agreements, notwithstanding any state substantive or procedural policies to the contrary. The effect of the section is to create a body of federal substantive law of arbitrability, applicable to any arbitration agreement within the coverage of the Act." *Moses H. Cone Mem. Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983); *accord Perry v. Thomas*, 482 U.S. 483, 488 (1987). The FAA provides that "[a] written provision in . . . a contract evidencing a

3

transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2; *see Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 443-44 (2006); *Matthews v. Rollins Hudig Hall Co.*, 72 F.3d 50, 53 (7th Cir. 1995). "Under the [FAA], arbitration may be compelled if the following three elements are shown: a written agreement to arbitrate, a dispute within the scope of the arbitration agreement, and a refusal to arbitrate." *Zurich Am. Ins. Co. v. Watts Indus., Inc.*, 417 F.3d 682, 687 (7th Cir. 2005) (citing 9 U.S.C. § 4).

An arbitration clause must be enforced "unless the agreement to arbitrate is not part of a contract evidencing interstate commerce or is revocable 'upon such grounds as exist at law or in equity for the revocation of any contract.'" *Perry*, 482 U.S. at 489 (quoting 9 U.S.C. § 2). "[A]ny doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability." *Moses H. Cone*, 460 U.S. at 24-25; *accord Cty. of McHenry v. Ins. Co. of the W.*, 438 F.3d 813, 823 (7th Cir. 2006).

In invoking the arbitration clause as to both plaintiffs, Route Consultant argues that East River is bound by the arbitration clause as a signatory to the Consulting Agreement. It further argues that, under Texas corporations and contract law, ERC is bound by the arbitration clause as East River's successor or alter ego and/or is estopped from denying it is bound because it has received the benefits of the Consulting Agreement; and that the arbitration clause mandates arbitration because the plaintiffs have rendered mediation unavailable by failing to notify Route Consultant of the dispute before it filed this lawsuit on December 27, 2019.

The plaintiffs, on the other hand, argue that Tennessee law governs every aspect of this

case pursuant to the choice of law provision in the Consulting Agreement. They further argue that the arbitration clause did not survive termination of the Consulting Agreement and that the lack of specifics about how and where to invoke arbitration makes the clause too vague to be enforceable. Finally, they argue that ERC could not be bound by the Consulting Agreement because it did not even come into existence until a month after it was terminated.

      A.      <u>Enforceability of Arbitration Clause</u>

The Court implicitly addressed this issue in its prior order by holding that the arbitration clause covered the disputes in this case between the parties bound by the clause. The plaintiffs now argue for the first time that the arbitration clause—and presumably any other obligation rooted in the Consulting Agreement—is unenforceable because the Consulting Agreement was rescinded in December 2017 rather than merely terminated.

Rescission cancels the agreement as if it never existed. Rescission "amounts to the unmaking of a contract, or an undoing of it from the beginning, and not merely a termination. . . . It is the annulling, abrogation of the contract and the placing of the parties to it in status quo." *Stonecipher v. Estate of Gray*, No. M1998-00980-COA-R3CV, 2001 WL 468673, at *4 n.2 (Tenn. Ct. App. May 4, 2001) (internal quotations omitted).[1] Parties may mutually agree to

---

[1] In this suit heard under the Court's diversity jurisdiction, the Court applies the choice of law rules of the state in which it sits—for this Court, Illinois. *McCoy v. Iberdrola Renewables, Inc.*, 760 F.3d 674, 684 (7th Cir. 2014) (citing *Felder v. Casey,* 487 U.S. 131, 151 (1988)). Under Illinois law, contract claims, or tort claims that depend on a contract, are subject to the contract's choice-of-law clause. *Thomas v. Guardsmark, Inc.*, 381 F.3d 701, 705 (7th Cir. 2004) ("Illinois respects a contract's choice-of-law clause as long as the contract is valid and the law chosen is not contrary to Illinois's fundamental public policy."); *NewSpin Sports, LLC v. Arrow Elecs., Inc.*, 910 F.3d 293, 306 (7th Cir. 2018) ("[I]n Illinois, tort claims that are dependent upon the contract are subject to a contract's choice-of-law clause regardless of the breadth of the clause." (internal quotations omitted)). Thus, contract and tort questions in the claims against Route Consultant are governed by Tennessee law pursuant to the choice of law provision in the Consulting Agreement.

rescind a contract:

> In Tennessee, it has long been held that a contract may be rescinded with the mutual consent and agreement of the parties. *Wright v. Fischer,* 148 S.W.2d 49, 53 (Tenn. Ct. App. 1940). Tennessee law also "requires that the termination of a contract by mutual consent of both parties be positive, clear, and unambiguous, conveying an unquestioned purpose to terminate the contract." *Russom v. Ins. Co. of N. Am.,* 421 F.2d 985, 993 (6th Cir.1970).

*Crye-Leike, Inc. v. Estate of Earp*, No. M2003-00740-COA-R3CV, 2004 WL 2636707, at *7 (Tenn. Ct. App. Nov. 18, 2004).

The plaintiffs run into an insurmountable roadblock to their argument: Supreme Court law is clear that an arbitrator, not the Court, must decide the validity of an arbitration agreement where the challenge is to the validity of the contract as a whole rather than to the arbitration clause specifically. *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 444-45 (2006) (citing *Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 403-04 (1967)). In *Buckeye Check Cashing*, the Supreme Court considered a consumer's complaint that a check-cashing service's standard contract, including its arbitration clause, was unenforceable because the fees it charged violated the state usury statute. "The crux of the complaint [was] that the contract as a whole (including its arbitration provision) [was] rendered invalid by the usurious finance charge." *Buckeye Check Cashing*, 546 U.S. at 444. The Court relied on *Prima Paint*, which held that if the invalidity was alleged specifically against the arbitration clause, the question was for the Court to decide, but if it was alleged generally against the contract as a whole, the arbitration clause was severable and enforceable, and it was for the arbitrator to decide the validity of the contract as a whole. *Id.* at 445 (citing *Prima Paint*, 388 U.S. at 403-04). The Supreme Court in *Buckeye Check Cashing* held therefore that, "as a matter of substantive federal arbitration law, an arbitration provision is severable from the remainder of the contract," and that, "unless the challenge is to the arbitration clause itself, the issue of the

6

contract's validity is considered by the arbitrator in the first instance." *Buckeye Check Cashing*, 546 U.S. at 445-46. The Supreme Court concluded that, in light of these principles, the arbitration clause was enforceable apart from the remainder of the contract. *Id.* at 446. It reasoned that it was better to compel arbitration of a dispute that the parties may be found not to have agreed to arbitrate than to deprive a party of its right to arbitrate based on a valid contract. *Id.* at 448-49.

Applying those same principles in this case, the arbitration clause is enforceable. Here, the plaintiffs challenge the enforceability of the arbitration clause by challenging the Consulting Agreement as a whole on grounds of rescission, but, except as discussed below, they do not specifically challenge the enforceability of the arbitration clause itself. Thus, as in *Buckeye Check Cashing*, the rescission argument does not render the arbitration clause unenforceable.

The plaintiffs assert one ground "as exist at law or in equity for the revocation of" the specific arbitration clause, 9 U.S.C. § 2, that the Court must decide under *Buckeye Checking* and *Prima Paint*. They charge that the specific arbitration clause is too vague and ambiguous to be enforced. It is true that to be enforceable under Tennessee law, an agreement must result from a meeting of the minds in mutual assent and must contain terms that are sufficiently definite to be enforced. *Doe v. HCA Health Servs. of Tenn., Inc.*, 46 S.W.3d 191, 196 (Tenn. 2001); *Thompson v. Hensley*, 136 S.W.3d 925, 929 (Tenn. Ct. App. 2003). "Indefiniteness regarding an essential element of a contract may prevent the creation of an enforceable contract." *Doe*, 46 S.W.3d at 196 (Tenn. 2001) (internal quotations omitted). "A contract must be of sufficient explicitness so that a court can perceive what are the respective obligations of the parties" and give an appropriate remedy. *Id.* (internal quotations omitted). However, the contract need not spell out every detail of the agreement as long as the parties mutually assented to the material terms and

7

the Court can enforce them.

The arbitration clause in the Consulting Agreement is not too vague to be enforced. The material terms provide that arbitration would be pursued after informal efforts to resolve and/or mediation, and that the arbitration would be in accordance with Tennessee law. The Tennessee Arbitration Act has default procedural rules to fill in the gaps if rules are specified in the agreement. For example, there are default procedures for selecting an arbitrator, *see* Tenn. Code Ann. § 29-5-304, and for conducting a hearing, *see* Tenn. Code Ann. § 29-5-306(1). That additional details of the arbitration proceeding are not spelled out in the arbitration clause is of no moment. It is clear that the parties mutually assented to a dispute resolution procedure according to Tennessee law that would avoid litigation. The terms of the arbitration clause are sufficient for the Court to understand the parties' agreement and to enforce it. It is not, therefore, invalid or unenforceable for failure to have definite terms.

The Court, having explained why the arbitration clause is enforceable, turns to the two remaining issues: who is bound by the arbitration clause, and what does it bind them to do.

B.     Parties Bound by Arbitration Clause

It is undisputed that the Consulting Agreement was a contract between, at a minimum, East River and Route Consultant. That is, all parties agree that East River and Route Consultant were at some point parties to an agreement that contained an arbitration clause. It is for this reason that the foregoing arbitrability analysis applies, and that both of those parties are bound by the arbitration clause.

However, the question involving ERC is different. Unlike with East River, it is unclear whether a contract binding ERC even existed. The *Buckeye Check Cashing* Court recognized this as a different issue than the one it decided: "The issue of the contract's validity is different

from the issue whether any agreement between the alleged obligor and obligee was ever concluded. Our opinion today addresses only the former. . . ." *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 444 n.1 (2006). Thus, the Supreme Court did not address question of who should decide whether the parties formed a contract at all. *Janiga v. Questar Capital Corp.*, 615 F.3d 735, 741 (7th Cir. 2010); *see Rent-A-Ctr., W., Inc. v. Jackson*, 561 U.S. 63, 71 n.2 (2010) (also declining to consider the question).

Three days after its *Rent-A-Center* decision, the Supreme Court explicitly acknowledged that, "where the dispute at issue concerns contract formation, the dispute is generally for courts to decide," including a dispute about whether the arbitration clause was agreed to. *Granite Rock Co. v. Int'l Bhd. Teamsters,* 561 U.S. 287, 296-97 (2010) (holding that the court decides when union ratified, and thus became a party to, collective bargaining agreement containing arbitration clause) (citing *First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 944 (1995)); *see Janiga v. Questar Capital Corp.*, 615 F.3d 735, 741-42 (7th Cir. 2010) (acknowledging "the court must decide whether a contract exists before it decides whether to stay an action and order arbitration"). This is because "[a]rbitration is strictly a matter of consent, and thus is a way to resolve those disputes—*but only those disputes*—that the parties have agreed to submit to arbitration." *Granite Rock*, 561 U.S. at 299 (emphasis in original; internal quotations and citations omitted). The upshot is that, if the Court decides there is a contract formed between the parties and it contains a valid arbitration clause that covers the dispute, and the inquiry is over. *See Janiga*, 615 F.3d at 743; *see also Granite Rock*, 561 U.S. at 299. The dispute must go to arbitration.

While not technically an issue of contract formation, the question of whether ERC is bound to East River's commitments in the Consulting Agreement shares a fundamental question:

9

Is ERC bound, by succession or otherwise, to abide by a valid, enforceable arbitration clause? This is a question for the Court to decide. *See First Options*, 514 U.S. at 943-46 (deciding whether non-signatories were bound by arbitration clause); *John Wiley & Sons, Inc. v. Livingston*, 376 U.S. 543, 546-47 (1964) (deciding whether merged corporation was bound by arbitration clause signed by predecessor corporation); *see, e.g., Janiga*, 615 F.3d at 743 (remanding for the court to decide whether one defendant is agent of another so as to benefit from an arbitration agreement). As with formation questions, this is for the Court to decide.

Generally, an arbitration agreement does not bind someone who did not sign the agreement containing the arbitration clause. *A.D. v. Credit One Bank, N.A.*, 885 F.3d 1054, 1059 (7th Cir. 2018). There may be exceptions to this general rule though, depending on state law, for: "(1) assumption, (2) agency, (3) estoppel, (4) veil piercing, and (5) incorporation by reference." *Id.* at 1059-60. Indeed, state law governs whether parties have formed a contract as well as whether a non-signatory is bound by an arbitration clause under one of the foregoing theories. *See First Options*, 514 U.S. at 944; *Janiga*, 615 F.3d at 742; *A.D.*, 885 F.3d at 1059-60.

The parties dispute which state's law applies to the matter of ERC's obligations regarding East River's agreement to arbitrate disputes connected with the Consulting Agreement. Route Consultant argues that Texas law applies because the plaintiffs are Texas corporations and because Texas has the most significant contacts with the dispute. Specifically it argues that ERC is liable under Texas law theories of estoppel, assumption, and veil piercing/alter ego. The plaintiffs argue that Tennessee law applies because of the choice-of-law provision in the Consulting Agreement, but it does not explain why the choice of Tennessee law would negate the third-party obligation theories Route Consultant asserts, which also exist under Tennessee law. *See Blue Water Bay at Ctr. Hill, LLC v. Hasty*, No. M2016-02382-COA-R3-CV, 2017 WL

5665410, at *8 (Tenn. Ct. App. Nov. 27, 2017); *Doe #1 v. Déjà Vu Consulting Inc.*, No. 3:17-cv-00040, 2017 WL 3837730, at *15-*16 (M.D. Tenn. Sept. 1, 2017). Instead, they argue that ERC could not be bound by the Consulting Agreement because it was not formed until a month after the Consulting Agreement was terminated and it was not a "permitted successor or assign" under the Consulting Agreement.

As a preliminary matter, the assumption of obligations under the Consulting Agreement is not prohibited by the agreement itself, which provides, "This Agreement will enure to the benefit of and to be binding on the Parties['] respective . . . *permitted* successors and assigns." Consulting Agreement § 26 (emphasis added) (Doc. 24-2 at 6). But the only requirement to get permission to pass on a contractual obligation applies to the "Contractor"—Route Consultant—not East River: "The *Contractor* will not voluntarily or by operation of law assign or otherwise transfer its obligations under this Agreement without the prior written consent of the Client." Consulting Agreement § 24 (emphasis added) (Doc. 24-2 at 6). Thus, the Consulting Agreement binds *all* successors and assigns of East River, but only the successor and assigns of Route Consultant to which East River has consented in writing. Consequently, the Consulting Agreement itself does not prohibit ERC from assuming East River's contractual obligations through succession.

In the absence of any other argument that ERC did not assume East River's residual obligations of the Consulting Agreement—under either Texas or Tennessee law—when it became East River's successor as pled in the Second Amended Complaint, the Court accepts that ERC assumed those obligations, including the obligation to arbitrate any dispute arising out of or in connection with the Consulting Agreement.

For the foregoing reasons, the Court finds that a contract binding ERC to arbitrate the

11

disputes with Route Consultant existed. Consequently, for the same reason East River is obligated to arbitrate those disputes, so is ERC. The Court turns to the clause itself.

### C. Arbitration Clause

The question of what the arbitration clause requires and whether all conditions precedent to invoking arbitration have been met is a question for the arbitrator to decide. Procedural questions of arbitrability such as whether a time limit bars an arbitration or whether conditions precedent have been satisfied are questions for the arbitrator, not the Court. *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 84 (2002) (citing *John Wiley & Sons, Inc. v. Livingston*, 376 U.S. 543, 546 (1964) (arbitrator should decide whether prerequisite to arbitration was completed)). The arbitrator, not the Court, must decide the meaning of the dispute resolution provisions of the Consulting Agreement and whether the conditions precedent to arbitration set forth therein have been satisfied.

## III. Conclusion

Because the plaintiffs' disputes with Route Consultant are "referable to arbitration under an agreement in writing for such arbitration," the Court must stay this action "until such arbitration has been had in accordance with the terms of the agreement." 9 U.S.C. § 3. Furthermore, because the plaintiffs have indicated an unwillingness to participate in arbitration of their disputes with Route Consultant, the Court finds they have failed, neglected, or refused to arbitrate and that Route Consultant is entitled to an order directing them to do so in accordance with the terms of the Consulting Agreement. *See* 9 U.S.C. § 4. Should the arbitrator decide the plaintiffs have no duty to arbitrate the merits of their dispute because the conditions precedent were not satisfied, they may seek relief from this Court consistent with that arbitration decision.

For the foregoing reasons, the Court:

- **GRANTS** Route Consultant's to compel arbitration and stay these proceedings (Doc. 37);

- **STAYS** the claims in this case against Route Consultant until arbitration has been had in accordance with the terms of the Consulting Agreement.  All other claims in this case shall proceed as scheduled;

- **COMPELS** East River and ERC to resort to arbitration of their disputes with Route Consultant; and

- **ORDERS** the plaintiffs to file a status report in September 2020, and every March and September thereafter until the arbitration is complete, and to file a final status report within 30 days of the completion of the arbitration.

**IT IS SO ORDERED.**
**DATED:  July 15, 2020**

s/ J. Phil Gilbert
**J. PHIL GILBERT**
**DISTRICT JUDGE**
